UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY HALE, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 10 C 0547 |
| | ) ) Hon. Charles R. Norgle, Sr. |
| CITY OF CHICAGO, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gregory Hale, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, Chicago Police Officers Michael Baker (misidentified as Bauer), Mark Pacelli, and David Wright, falsely arrested him and conducted an illegal search of his person. He also raises a *Monell* claim against the City of Chicago. This matter is before the court for ruling on Defendants' motion for summary judgment. For the reasons stated below, the motion is granted.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The court does not "judge the credibility of the

witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594–595 (7th Cir. 2007), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## LOCAL RULE 56.1 (N.D. ILL.)

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motions for summary judgment, Defendants included a "Notice to Pro Se

Litigant Opposing Motion for Summary Judgment," as required by circuit precedent. The notices clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff failed to file a proper response to Defendants'

statement of uncontested facts and he failed to support his additional statements of facts. Plaintiff attempts to dispute most of Defendants' statement of undisputed facts. However, he does not cite to any supporting materials to support any denials. In addition, the denials are based merely on his conjecture. For example, he disputes Defendants' statement of uncontested facts numbers 11 through 21 based solely on his assertion that all of the victim's statements regarding the incident were fabricated. In light of Plaintiff's failure to properly respond to the Defendants' statement of uncontested facts, Defendants' statement of uncontested facts are deemed admitted.

Plaintiff also failed to support any of his proposed additional facts in support of his opposition to Defendants' motion; instead, he makes conclusory statements of law. For example, he states, "On or about June 6, 2008, Plaintiff was unlawfully searched and placed into custody, falsely arrested by one or more of the Defendants." Plaintiff's proposed additional statements of fact are stricken for failure to comply with L.R. 56.1(b).

The court also notes that Plaintiff attempts to raise new claims regarding the conditions of his confinement at Cook County Jail. These claims were not part of the second amended complaint and are not before court. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (finding that plaintiff cannot amend his complaint through arguments in opposition to a motion for summary judgment).

## FACTS

In June 2008, Defendants Baker and Pacelli were employed as detectives at the Area 2 Detective Division of the Chicago Police Department. (Defs.' 56.1(a)(3) Statement ¶¶ 5-6.) Sergeant Wright was a supervising detective in the Area 2 Detective Division. (*Id.*, ¶ 7.)

On the night of June 2, 2008, Detectives Baker and Pacelli were assigned to investigate the

4

alleged kidnaping of AJ. (Defs.' 56.1(a)(3) Statement ¶ 8.) That night, they went to Trinity Hospital to interview AJ. (*Id.*) They observed that AJ was visibly shaken and had marks and injuries consistent with a physical altercation, including scratches on her hands, a bite mark on her right hand, and facial swelling. (*Id.*, ¶ 10.) AJ told Detectives Baker and Pacelli that earlier that night she was walking westbound on 89th Street on her way home from the store when Plaintiff pulled up near her in a red Mustang convertible. (*Id.*, ¶ 11.) Plaintiff pulled the car onto the sidewalk, blocking her way, and told her to, "Come here." (*Id.*, ¶ 12.) Plaintiff handed AJ a business card through the passenger side window and she began to walk away. (*Id.*, ¶ 13.) At that point, Plaintiff jumped out of his car and pulled AJ's cell phone from her hand. (*Id.*, ¶ 14.) AJ attempted to grab her cell phone back from Plaintiff but he grabbed her and pulled her into the car. (*Id.*, ¶ 15.)

Plaintiff drove north on Muskegon to 88th Street and turned westbound on 88th Street. (Defs.' 56.1(a)(3) Statement ¶ 16.) As Plaintiff drove, AJ was fighting with Plaintiff, who was punching her. (*Id.*) AJ eventually was able to "slam" the gears and the vehicle stopped suddenly near 88th Street and Colfax Street. (*Id.*, ¶ 17.) She was able to get out of the car, but Plaintiff followed her and he continued fighting with her, including, slamming her to the ground. (*Id.*, ¶ 18.) While they were fighting, Plaintiff was able to look at Plaintiff's license plate. (*Id.*, ¶ 19.) AJ was able to push Plaintiff away and ran toward two males on the street. (*Id.*, ¶ 20.) As she ran away, Plaintiff yelled to her that he would run her over. (*Id.*) Plaintiff got back into his car, drove westbound on to South Chicago Avenue, and turned northbound. (*Id.*, ¶ 21.)

Froilan Nunez, an eye-witness, waited with AJ for the police to arrive and was present when Chicago Police Officers Hansen and Stubblefield responded to the 911 calls. (Defs.' 56.1(a)(3) Statement ¶ 22.) Nunez was present when AJ spoke with the officers. AJ told the responding

officers that she did not know the man who had kidnaped her, that he repeatedly had beaten her, and that he drove off in a red Mustang with her Boost Mobile cell phone. (*Id.*, ¶¶ 23-24.) She described the offender as a black male, 30-40 years old, 5'5" - 5'6" tall, 175-185 pounds, wearing a white t-shirt and blue jeans. (*Id.*, ¶ 25.) She described the offender's car as a two-door, Ford Mustang convertible, with Illinois licence plate number X584690. (*Id.*, ¶ 26.) AJ told the officers that the two males she had ran to after escaping had phoned 911 for her. (*Id.*, ¶ 27.) AJ was taken home and then transported via an ambulance to Trinity Hospital for medical treatment. (*Id.*, ¶ 28.)

After interviewing AJ at Trinity Hospital, Detectives Baker and Pacelli reviewed the General Offense Case Report which contained the same information that AJ had given them about what happened that night. (Defs.' 56.1(a)(3) Statement ¶ 29.) The Case Report also: identified the two eye-witnesses to the battery of AJ, Nunez and Juan Correa; gave the offender's name, Gregory Hale; and included the license plate number of the Mustang, X584690. (*Id.*, ¶ 31.) In June 2008, Plaintiff owned a red Ford Mustang convertible with license plate number X584690. (*Id.*, ¶ 36.)

Based on the information from AJ and the offender's name from his business card, Detectives Baker and Pacelli went back to Area 2 Detective Division, confirmed Plaintiff's identity with records from the Secretary of State, and then input this information into a computer program, which generated a photo array. (Defs.' 56.1(a)(3) Statement ¶ 32.) The computer program produced a photo array containing the mug shots of six black males, all with similar demographics as Plaintiff. (*Id.*, ¶ 33.) At approximately 12:15 a.m., on June 3, 2008, AJ signed the photo-spread advisory form that informed her that the offender may not be in the photo array. (*Id.*, ¶ 34.) AJ reviewed the photo array in an attempt to identify the offender. (*Id.*, ¶ 35.) AJ signed her initials above the photograph of Plaintiff. (*Id.*) Following AJ's positive identification of Plaintiff, Detectives Baker and Pacelli

attempted to locate him but were unsuccessful. (*Id.*, ¶ 38.)

Later that day, Detectives Baker and Pacelli submitted Investigative Alert #299954259 for Plaintiff. (Defs.' 56.1(a)(3) Statement ¶ 39.) The investigative alert was approved by a supervisor the next day. (*Id.*). The investigative alert stated that Plaintiff was wanted for kidnaping with probable cause to arrest. (*Id.*, ¶ 39.)

On June 5, 2008, Plaintiff went to the 4th District Police Station to find out why the police had been looking for him. (Defs.' 56.1(a)(3) Statement ¶ 40.) Plaintiff identified himself and the police officers ran a name check, which revealed that there was an active investigative alert for him, with probable cause to arrest him. (*Id.*, ¶ 41.) Chicago Police Officers Zalinski and Guzman then took Plaintiff into custody. (*Id.*, ¶ 42.) Plaintiff was searched by Officer Burke when he was taken into custody. (*Id.*, ¶ 46.) Detectives Baker, Pacelli, and Wright were not present when Plaintiff was taken into custody, did not arrest Plaintiff, and were not present when Plaintiff was searched incident to his arrest. (*Id.*, ¶¶ 43-45.)

When Detectives Baker and Pacelli arrived at work on June 6, 2008, they learned that Plaintiff had been arrested on the investigative alert and that he was in custody at the 4th District Police Station. (Defs.' 56.1(a)(3) Statement ¶ 47.) Plaintiff was subsequently transported to an interview room in the Area Two Detective Division. (*Id.*, ¶ 48.) In the interview room, Detectives Baker and Pacelli *Mirandized* him and informed him of the allegations against him. (*Id.*) Plaintiff exercised his right to an attorney and the interview was immediately terminated. (*Id.*, ¶ 49.)

That same day, Detectives contacted AJ to view a physical line-up at the Area Two Detectives Division, which included Plaintiff. (Defs.' 56.1(a)(3) Statement ¶ 50.) When AJ arrived, she read and signed an advisory form prior to viewing the line-up. (*Id.*, ¶ 51.) AJ positively

identified Plaintiff as her attacker and signed felony complaints for robbery and kidnaping. (*Id.*) The Felony Review Unit of the Cook County State's Attorney was contacted following the identification and Assistant State's Attorney Mary Innes responded to the Area 2 Detective Division. (*Id.*, ¶ 52.)

Detectives Baker and Pacelli also contacted Nunez and Correa to be interviewed and to view the physical line-up. (Defs.' 56.1(a)(3) Statement ¶ 53.) During his interview, Nunez told Detectives Baker and Pacelli that he and his friend, Correa, were standing on 88th Street, adjacent to the northwest corner of 88th and Colfax, when he saw a red Mustang drive westbound on 88th Street and stop 40-50 feet away from them. (*Id.*, ¶¶ 55-56.) Nunez saw AJ quickly exit the car as though she was trying to urgently get away. (*Id.*, ¶ 56.) Nunez saw the man in the car fighting with AJ over a cell phone. (*Id.*, ¶ 57.) Eventually, AJ pulled the cell phone away and it landed in the grass. (*Id.*) AJ attempted to pull her black purse from the car and was having a tug-of-war with the man. (*Id.*, ¶ 58.) Nunez saw AJ get her purse away from the man and he grabbed the cell phone off the grass and put it into the Mustang. (*Id.*, ¶ 59.)

Nunez saw AJ and the man fighting and AJ break free from the man, yelling, "Give me my stuff!" (Defs.' 56.1(a)(3) Statement ¶ 60.) The man grabbed AJ around the waist, threw her to the ground, and put his weight on her chest while he punched her in the face. (*Id.*, ¶ 61.) Nunez then called 911. (*Id.*) While Nunez was on the phone with 911, the man continued to fight with AJ and she yelled, "Call 911! Call 911!" (*Id.*, ¶ 62.) The man grabbed AJ by the wrist and dragged her to the driver's side of the car, slamming her into the car. (*Id.*, ¶ 63.) AJ told the man that, "they called 911," at which time, the man got back into the car and drove westbound on 88th Street. (*Id.*) Nunez then gave his phone to AJ to call 911 again. (*Id.*, ¶ 64.) During his interview, Correa corroborated Nunez's and AJ's stories. (*Id.*, ¶¶ 65-71.)

After Assistant State's Attorney Innes conducted separate interviews with Nunez and Correa, she approved charges of kidnaping and robbery against Plaintiff. (Defs.' 56.1(a)(3) Statement ¶¶ 73-74.)

On June 9, 2008, Detectives Baker and Pacelli electronically submitted a Cleared Closed Supplementary Report (Supp. Report) for approval by a supervisor. (Defs.' 56.1(a)(3) Statement ¶ 75.) On June 10, 2008, Sergeant Wright reviewed the Supp. Report to ensure that it was complete as to form and substance and to approve the report. (*Id.*, ¶ 76.) The review and approval of the report was Sergeant Wright's only role in the investigation regarding the arrest of Plaintiff. (*Id.*, ¶ 77.) Sergeant Wright had no personal knowledge of the facts and did not speak to AJ or the witnesses. (*Id.*)

## ANALYSIS

### I. Individual Capacity Claims

Individual liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Although direct participation is not required, there must be at least a showing that the individual acquiesced in some demonstrable manner in the alleged constitutional violation. *See Palmer*, 327 F.3d at 594. For a supervisor, the personal responsibility requirement of §1983 for an official is satisfied if the conduct causing the constitutional violation occurs at the supervisor's direction or with his knowledge and consent. *See Hildebrandt v. Illinois Dep't of Natural Resources*,

347 F.3d 1014, 1039 (7th Cir. 2003). The supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some casual connection or affirmative link between the action complained about and the official sued is necessary for §1983 recovery." *Hildebrandt*, 347 F.3d at 1039 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Here, the undisputed facts establish that none of the three named police officers were present when Plaintiff was arrested or searched incident to the arrest. Thus, they cannot be held liable in their individual capacities for such claims.

Furthermore, the undisputed facts demonstrate that Plaintiff's false arrest and illegal search claims fail as a matter of law.

The existence of probable cause to arrest is an absolute bar to a Section 1983 claim for false arrest and the plaintiff bears the burden of establishing the absence of probable cause. *Abbott v. Sangamon Cty., Ill.* 705 F.3d 706, 714 (7th Cir. 2013); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301-302 (7th Cir. 2011). Probable cause exists if the facts and circumstances known to arresting officer would lead to a reasonable person believing that the suspect committed a crime. *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011); *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007). "Probable cause 'demands even less than probability,' it 'requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.'" *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (citations omitted). A police officer may rely on information from the victim or a witness in making a probable cause determination if the officer believes that the witness is credible. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007); *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006). Furthermore, the arresting officer's subjective reason for making the

arrest does not need to be the criminal offense as to which the known facts provide probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Thus, the existence of probable cause for any offense, even one that was not identified at the scene or in the charging documents, will defeat a false arrest claim. *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011).

In the instant case, the investigative alert that was issued by Detectives Baker and Pacelli indicated that Plaintiff was wanted for kidnaping. Under Illinois law, a person commits the offense of kidnaping when he: (1) knowingly and secretly confines another against his or her will by force or threat of imminent force, (2) carries another person from one place to another with the intent to secretly confine that other person against his or her will or, (3) by deceit or enticement induces another to go from one place to another with intent to secretly confine that other person against his or her will. 720 ILCS 5/10-1. Based on the extensive facts known by the detectives when they issued the investigative alert, as fully set forth above, probable cause existed to arrest Plaintiff for kidnaping (as well as battery, *see* 720 ILCS 5/12-3).

In addition, the search of Plaintiff incident to his arrest was valid to find weapons and any evidence that may have been on his person. *See United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000); *United States v. Garcia*, 605 F.2d 349, 352-53 (7th Cir, 1979) (holding that a custodial search incident to arrest does not violate a person's Fourth Amendment rights).

## II. Official Capacity Claim

To prevail on a Section 1983 claim against a government entity, a plaintiff must demonstrate that an alleged constitutional right deprivation was caused by a policy, custom, or practice. *See Monell v. Department of Social Serv.*, 436 U.S. 658, 692 (1978). Unconstitutional policies or customs can take three forms: an express policy that, when enforced, causes a constitutional

deprivation; a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or a constitutional injury that was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000).

Plaintiff's claim against the City of Chicago fails. First, as discussed above, Plaintiff has not demonstrated a deprivation of a constitutional right. Nor has he demonstrated that his arrest and search was the result of a policy, custom, or practice.

Based on the above, the Court finds that Defendants are entitled to judgment as a matter of law as to all claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [98] is granted. Plaintiff's complaint is dismissed. Judgment is rendered in favor of Defendants. This case is terminated.

Dated: 5-22-13

Charles R. Norgle, Sr.
United States District Court Judge